UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SPENCER NEAMAN, et al.,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>　　　　　　　　Defendant. | Case No. 2:16-cv-00217-JCM-PAL<br><br>ORDER<br><br>(Mot Strike – ECF No. 49) |

Before the court is the government's Motion to Strike Plaintiffs' Amended Expert Disclosures (ECF No. 49). The court has reviewed the motion, plaintiffs' Response (ECF No. 51), and the government's Reply (ECF No. 52).

**<u>BACKGROUND</u>**

The Complaint (ECF No. 1) in this case was filed February 4, 2016. This is a medical malpractice action brought on behalf of the parents of F.N., a minor child. The child was a 13-year-old girl when she was taken for care and treatment at a federally funded rural health facility in Wendover, Nevada. Her parents brought her to the Wendover Community Health Center on March 4, 2013, for complaints of abdominal pain which the child beginning three days prior. She was diagnosed with gastroenteritis and an upper respiratory infection, treated and released. Antibiotic therapy and a recommended specific diet was prescribed for her. On March 9, 2013, when her condition had not improved, her parents took her to Primary Children's Medical Center in Salt Lake City for further evaluation. She was seen in the emergency room, diagnosed with septic shock, intra-abdominal abscesses and bowel perforation, vomiting, and respiratory distress, and admitted to the pediatric intensive care unit. After she was stabilized, she was taken to the operating room where doctors found she had a perforated appendix with generalized peritonitis. She remained in the hospital for more than a month in critically ill condition until released to an

intensive rehabilitation therapy and treatment center on April 17, 2013 where she remained until May 23, 2013.  It is undisputed that she suffered a spinal cord injury characterized as tetraplegia, more commonly called quadriplegia.  She is confined to a wheelchair, and requires 24/7 care to attend to her most basic needs.

     Counsel for plaintiffs filed a proposed discovery plan and scheduling order (ECF No.12) which requested special scheduling review.  Although the parties were in agreement concerning most of the proposed deadlines, they disagreed about the deadlines for disclosing initial and rebuttal experts.  The United States asked that the court order deadlines consistent with the requirements of LR 26-1(e) (now LR 26-1(b). Plaintiffs requested that initial expert disclosures be due 120 days before the close of discovery, and rebuttal expert disclosures 28 days before the close of discovery. The court proposed plan advised the court that a substantial amount of discovery had already taken place because plaintiffs had previously filed in state court action in early 2013.  When it was determined that the Federal Tort Claims Act applied, the United States removed it on August 14, 2014.  Discovery was substantially completed by December 2015 when government counsel indicated she intended to file a motion to dismiss for lack of subject matter jurisdiction for failure to comply with the notice requirements of the FTCA.  Although plaintiffs' counsel disagreed with this analysis the parties eventually agreed the first action would be voluntarily dismissed and this case refiled.  However, plaintiffs' made it clear he wanted to proceed expeditiously and that the parties would not engage in a "do-over."  The court set the matter for hearing an after hearing from both sides entered a Discovery Plan and Scheduling Order (ECF No. 21) June 10, 2016 which established a June 24, 2016 deadline for disclosing experts.  Discovery was completed and closed on September 30, 2016.

After the close of discovery, the district judge entered an Order (ECF No. 37) on April 4, 2017, denying defendant's motion to dismiss.

On May 10, 2017, plaintiff filed a Motion to Amend Expert Disclosures (ECF No. 40) to substitute a new life care expert and supplement previous expert reports.  Plaintiff timely disclosed an expert life care planner, Beverly Krensky, within the time allowed by the discovery plan and scheduling order.  Ms. Krensky prepared an expert report and was deposed before the discovery

cutoff. However, after the defendant's motion to dismiss was denied, counsel for plaintiffs communicated with all of their experts to update them that a trial date would be set. Ms. Krensky responded by advising plaintiffs' counsel that she had taken a job with the Veteran's Administration and was no longer willing to serve as plaintiffs' expert at trial. Plaintiffs therefore requested leave to substitute another life care planner for Ms. Krensky. Before the motion to substitute was filed, counsel for the government agreed to allow a substitution, but only if plaintiffs' new life care planner merely adopted the opinions of Ms. Krensky. Counsel for plaintiffs declined to accept this limitation and filed a Motion to Amend Expert Disclosures (ECF No. 40). The motion also sought leave to amend the disclosures of the timely disclosed economic expert who had done the mathematical calculations to reduce the life care planner's opinions concerning future care to present value.

At a hearing on the motion to substitute on June 12, 2017, the government initially argued plaintiffs could and should attempt to obtain a statutory waiver from the VA to allow Ms. Krensky to testify. Plaintiffs opposed this arguing that Ms. Krensky did not want to testify given her new employment, and that plaintiffs were unwilling to waive her conflict of interest. The government argued that if substitution was allowed, strict limitations should be imposed on the opinions a new life care planner could provide. The government also opposed plaintiffs' request to amend the expert witness disclosures of the economist who calculated the present value of the life care plan prepared by the prior expert, and opposed any modification of plaintiffs' remaining expert witness disclosures, specifically modifications of the opinions of plaintiffs' physical medicine and rehabilitation expert, Dr. Gooch.

Counsel for the government argued that it did not retain a rebuttal physical medicine, or rehabilitation specialist as an expert in its case in chief relying upon plaintiffs existing expert designations. However, the United States requested leave to designate a physical medicine and rehabilitation doctor in the event the substituted life care planner relied on new or additional opinions of plaintiffs' experts.

Counsel for plaintiffs indicated that he did not anticipate that his physical medicine and rehabilitation doctor, Dr. Gooch, would change her opinions. Rather, he anticipated that,

consistent with the procedure followed with his prior life care planner, his substitute life care planner would have Dr. Gooch review the recommendations to determine whether Dr. Gooch agreed that the recommendations were supported by her own opinions on the minor child's future needs.

The court granted the motion to substitute the life care planner and precluded the plaintiffs from providing the substitute life care planner with new information or opinions not made available to the original life care planner. The court also granted the request to amend the economic expert's report to recalculate the mathematical computations based on the substitute life care planner's opinions and report. However, the court made it clear that in granting the request to substitute the life care planner, and amend the economist's report to re-compute the mathematical computations based on the substitute expert's report, the plaintiffs would not be entitled to an "end around" or a "do over" to patch holes in the prior experts' opinions.

The court gave the plaintiff 30 days in which to serve supplemental expert reports and continued the matter for further status hearing on July 20, 2017, to address whether the substituted expert's life care plan altered the landscape such that the United States should have the opportunity to disclose additional rebuttal experts or supplement their rebuttal reports.

At the July 20, 2017 hearing, government counsel indicated that she believed plaintiffs' counsel had violated the court's prior order regarding the limitations imposed on the substitute life care plan expert and amended economic expert's report in several respects. As a result, she indicated the United States intended to file a motion to strike the amended expert disclosures in their entirety. However, if the court "allowed the amended disclosures to stand" the United States wanted an opportunity to retain a physical and rehabilitation medical expert.

Plaintiffs opposed this request indicating that the government had not previously disclosed a physical medicine and rehabilitation expert before the expert disclosure deadline. Plaintiffs' counsel argued that the court allowed the substitute life care planner to work with plaintiffs' currently retained physical and medical rehabilitation expert to create a new life care plan. Plaintiffs' counsel claimed he was only aware of one aspect of the new life care plan that was added based on new opinions of Dr. Gooch. This was the category of expense related to

4

exoskeleton technology. Plaintiffs' counsel indicated that he did not understand how this recommendation would open the door for the United States to retain a physical medicine and rehabilitation expert. He also stated that he would prefer to "remove that aspect of the life care plan than have the opportunity for them to designate an entirely new witness." *See* Transcript of July 20, 2017 hearing 8:17 – 9:8 (ECF No. 48).

It was apparent that the parties had not discussed whether, and if so, in what field the government should be permitted to designate an additional rebuttal expert before the July 20, 2017 hearing. Neither side had provided the court with a copy of the original or amended reports of the experts involved in the parties' disputes. The court indicated that it was not at all inclined to strike plaintiffs' new life care planner as an expert in the absence of extraordinarily persuasive arguments supporting the United States request. However, the court indicted that it would enforce its prior order, and would consider limiting the scope of the testimony plaintiffs' new life care planner expert could provide to remedy any failure to comply.

In short, the United States took the position that the plaintiffs' amended expert disclosures should be stricken in their entirety. However, if the court was not inclined to strike the amended disclosures, the United States requested leave to retain a physical medicine and rehabilitation expert. This motion to strike, response, and reply followed.

In the current motion, the United States seeks to strike plaintiffs' amended expert disclosures in their entirety arguing the plaintiffs' amended disclosures "flagrantly violate the express terms of the court's orders" following the June 12, 2017 hearing. Specifically, the United States claims that the plaintiffs violated the courts orders that the new life care planner may not rely on materials not made available to the initial life care planner The United States maintains the new life care planner bases her opinions on previously undisclosed opinions of Dr. Gooch, plaintiffs' physical medicine and rehabilitation expert. It also argues plaintiffs changed the calculation of value of every category of damages in their economist's report, and added a previously undisclosed economic expert as the author of the report.

Plaintiffs' initial damages calculation based on the original life care plan and the economic expert's report of the present value of the cost of that plan was $8,763,579.00. The amended

economic report values economic loss at $11,437,567.00, a difference of $2,673,988.00 in claimed damages from what the United States expected through the close of discovery. The motion to strike argues that the amended disclosures should be stricken in their entirety as a sanction under Fed. R. Civ. P. 37(b)(2)(A)(ii-iii) for violating the court's limitations order. The United States also contends the expert disclosures are untimely and may be excluded under Rule 26(a)(2)(D) and LR 26-1. Additionally, the United States asks for sanctions in the form of reasonable expenses, fees and costs associated with the conduct giving rise to the sanctions under both Rule 37(b) and 37(c).

The United States argues that the report of plaintiffs' substitute life care planner expert, Ms. Wainwright, violated the court's order by improperly relying upon a rebuttal expert report and video taken by plaintiffs' rebuttal expert neurologist Dr. Strober. Wainwright also improperly relied upon the deposition transcript of Ms. Krensky. Additionally, Ms. Wainwright's report contains a 60-page attachment with a selective summary of certain medical records which support plaintiffs' theory of causation that was not included in Ms. Krensky's previous life care plan. The United States fears this summary was prepared in an attempt to bolster the testimony of plaintiffs' other causation experts who have not identified these records in support of the opinions they disclosed.

The United States argues that the amended economist's report violates the court's order in that it disclosed an additional previously undisclosed economic expert, Mr. Boyer. Further, the amended report increased the present value estimate of lost earning capacity benefits from $790,000.00 to $828,000.00, and alters the applicable discount rate for earnings from 4.17% to 4.03%. The amended economic expert report also changed the estimate for lost benefits from 25% of lost earnings to 24.5%.

If the court does not grant the United States' motion to strike the amended disclosures in their entirety, the United States seeks leave to retain a physical medicine and rehabilitation expert to rebut plaintiffs' amended disclosures to address Dr. Gooch's previously undisclosed recommendation that add approximately $2.5 Million Dollars to the life care plan. The United States also asks that the court award sanctions in the form of an order requiring the plaintiffs and

6

their counsel to pay reasonable expenses of retaining new experts associated with the plaintiffs' disregard of Rules 37(b) and 37(c).

The plaintiffs oppose the motion to strike acknowledging that Ms. Wainwright reviewed Beverly Krensky's deposition transcript and a video of the physical evaluation performed by plaintiffs' rebuttal expert pediatric neurologist, Dr. Strober. However, this was not done in violation of the court's order. Rather, when plaintiffs' counsel realized a need to find a substitute a life care planner, it contacted two potential experts and provided them with these and other items to evaluate whether the experts were willing to serve as an expert on a shortened timeframe. Plaintiffs argue that although Ms. Wainwright reviewed these two items, nothing in her report indicates that she relied on them in forming her opinions. Plaintiffs dispute that the variations in Ms. Wainwright's life care plan violate the court's order. Rather, both plaintiffs' original life care plan expert, Ms. Krensky, and substitute expert, Ms. Wainwright, prepared their plans as independent experts. The differences in the plans are explained by their differences in interpreting how to implement the future care Dr. Gooch opined the minor child would need.

Plaintiffs dispute that there are any significant changes to Dr. Gooch's recommendations that Ms. Wainwright relied on in formulating her life care plan. With respect to the exoskeleton technology recommendation, Ms. Wainwright's report does not indicate that spine x-rays were included in her plan at Dr. Gooch's recommendation. Rather, the recommendation for exoskeleton technology is Ms. Wainwright's interpretation of the need for follow up evaluation related to F.N.'s necessary future spinal fusion which Dr. Gooch recommended. Plaintiff also disputes that there is any significant difference between Ms. Krensky's estimate of future care for future surgery, or the need for juvenile and adult summer camp including travel to and from camp. Plaintiffs claim that Ms. Wainwright's opinion that the plaintiffs need a new house is consistent with Ms. Krensky's recommendation of a home addition or remodel to create an accessible bathroom and bedroom with an ingress/egress ramp. Ms. Krensky's report included an opinion the plaintiffs would need yard trimming and snow removal services. This is akin to Ms. Wainwrights' life care plan which includes lifetime HOA fees for plaintiffs' new house.

Plaintiffs also argue that the government's objections about the differences in the economic value of both plans do not take into account that certain categories of damages increased while others decreased. Plaintiffs dispute that Ms. Wainwright life care plan recommendations are the result of any changes to Dr. Gooch's opinions on F.N.'s future needs. Rather, they are merely a different life care planner's recommendation on how to implement Dr. Gooch's recommendations. With respect to Ms. Wainwright's recommendations concerning future surgery, plaintiffs claim the two experts just used different terminology.

Plaintiffs' also argue their causation experts formed their opinions long before Ms. Wainwright was involved in the case. Ms. Wainwright's summary of medical records is not an attempt to bolster the testimony of other causation experts—a suggestion plaintiffs find insulting. Ms. Wainwright summarizes records in every life care plan that she prepares.

With respect to the economic expert, plaintiffs affirmatively represent they have no intention of calling Dr. Boyer as an additional economic expert. His involvement in the report was limited to reviewing the calculations and assumptions made by the previously disclosed expert, Stephen Nicolatus, who also signed the amended disclosure. Plaintiffs' instruction to Mr. Nicolatus was to recalculate the economic report in light of the new life care plan which did not violate the court's order. Variations in the applicable discount rate for lost earnings is simply an update recognizing the fluctuation of interest rates and inflation which have changed dramatically since the initial report was prepared. Consistent with the court's order, Mr. Nicolatus was simply redoing the math.

Finally, plaintiffs argue that the amended expert designations concerning the life care plan and the present economic value associated with the new life care plan should not give the United States an opportunity to designate a physical medicine or rehabilitation expert it declined to designate before the expert disclosure deadline. Even if some of the differences in Ms. Wainwright's plan can be attributed to changes in Dr. Gooch's opinions, which plaintiffs dispute, plaintiffs have not violated the court's limitation order. Defendant is merely nitpicking every aspect of this case and has filed a frivolous motion attempting to delay the plaintiffs' access to justice. The court should therefore sanction defendant for its negligent misrepresentations to the

8

court and require defendant to pay plaintiffs' attorney's fees for the necessity of opposing this motion to strike.

**DISCUSSION**

The court has reviewed the voluminous moving and responsive papers and supporting exhibits, which include the original and amended reports of the expert witnesses involved. It is clear that Ms. Wainwright reviewed materials that were not available to the original life care planner in forming her opinions. Specifically, Ms. Wainwright reviewed Ms. Krensky's deposition transcript in which the United States disclosed its criticisms of Ms. Krensky's approach with the aid of its own life care planner's opinions. Ms. Wainwright also reviewed the rebuttal report of plaintiffs' pediatric neurologist expert and related video which did not exist at the time the original life care planner prepared her report.

The court accepts the representation of counsel for plaintiffs that Ms. Krensky's deposition transcript and the rebuttal neurologist's report and video were provided to Ms. Wainwright before the court entered its order limiting the materials the substituted life care planner could consider in rendering her opinions to the materials available to Ms. Krensky. Nevertheless, the plaintiffs received a strategic litigation advantage by having Ms. Wainwright review these materials. The deposition transcript revealed government counsel's cross-examination and litigation strategy for attacking the prior life care planner's opinions. Reviewing the rebuttal neurologist report and video similarly allowed Ms. Wainwright to obtain the benefit of the government's rebuttal expert's opinions not available to the original life care planner.

Both life care planners had Dr. Gooch review their plans to determine if the recommendations were consistent with Dr. Gooch's opinions on the child's future care needs. Plaintiffs claim that Dr. Gooch did not change any opinions connected with Ms. Wainwright's report. The court does not entirely agree. For example, contrary to plaintiffs' arguments, the two life care planners do not simply use different terminology to describe the nature of a future surgery F.N. will require. Rather, the two life care planners clearly obtained different information about the surgery Dr. Gooch opined the child would need in the future. Ms. Krensky's report lists a future posterior spinal instrumentation and fusion surgery for scoliosis F.N. will require. Ms.

Wainwright's report indicates the fusion surgery F.N. will need is to correct shortened hamstrings. Nothing in Dr. Gooch's report suggests surgery will be required for shortened hamstrings.

Additionally, the court does not agree that Dr. Wainwright's opinion that the plaintiffs will need a new house and lifetime HOA fees equates with the recommendation from Dr. Gooch and Ms. Krensky that F.N. and her family need a handicap accessible bathroom, and bedroom.

With respect to the economic expert, plaintiffs' counsel affirmatively represents that plaintiffs have no intention of calling Mr. Boyer, the additional signatory on the report who merely checked the previously designated expert's calculations. The amended economist's report changed substantially. It increased the damages calculation by nearly $2.7 million dollars. However, the changes are based, for the most part, on the differences in the life care planners' approach on to how to implement Dr. Gooch's opinions about the child's future needs. The changes are also significantly impacted by the change in the inflation and interest rates since the original report was prepared.

Material changes in medical and economic conditions are issues which both sides can address at trial. The tragic events which resulted in this lawsuit occurred in early 2013 when F.N. was 13. More than five years later trial is now set for June of this year. Things sometime change during the time it takes to get a case ready for trial. A trial is supposed to involve a search for the truth. The result of that search for truth is what we call justice. If F.N. were to make a miraculous recovery the United States would certainly address how her dramatically changed circumstances impact both sides experts' opinions. If F.N.s medical condition and needs change, or current economic changes occur that must be accounted for in calculating present value, these are issues that can and should be addressed with the trial court. What the parties may not do, however, is fail to timely disclose changed circumstances in an attempt to gain litigation advantage.

Reviewing the record as a whole the court does not find that the plaintiffs intentionally violated the court's order imposing limitations on the scope of the substituted life care planner's opinions. The court also finds plaintiffs did not violate the court's order by serving the economist's amended disclosure which calculated the present value of the new life care plan, updated by changes in the inflation and interest rates. The court will deny the United States request to strike

the amended disclosures in their entirety based on significant changes to Dr. Gooch's initial opinions. There are some significant changes in the life care plan recommendations which increase the projected cost substantially based on different interpretations of Dr. Gooch's recommendations, rather than on any changed circumstances in F.N.'s condition. Ms. Krensky based her life care plan on Dr. Gooch's recommendations. Ms. Wainwright's report also indicates her life care plan is based on recommendations made by Dr. Gooch. The court will remedy these changes in Dr. Gooch's opinions and/or the life care planners' interpretation of those opinions, by precluding the plaintiffs from introducing testimony from Dr. Wainwright in these areas rather than striking her opinion in its entirety.

The court will also deny the United States' request to designate an expert in physical medicine and rehabilitation. The United States had an opportunity to designate a physical medicine and rehabilitation expert within the time allowed by the discovery plan and scheduling order. Having reviewed and compared the original and amended disclosures, the court finds that limiting the scope of the amended disclosure testimony sufficiently addresses any advantage plaintiffs obtained by providing Ms. Wainwright with additional materials and opinions not available to Ms. Krensky and by allowing Ms. Wainwright to refine Dr. Gooch's recommendations. The court will grant the United States leave to serve a rebuttal life care plan report to rebut the report of Ms. Wainwright, and rebuttal economic expert report to rebut the amended disclosure of Mr. Nicolatus.

Having reviewed and considered the moving and responsive papers,

**IT IS ORDERED** that the United States' Motion to Strike Plaintiffs' Amended Expert Disclosures (ECF No. 49) is **GRANTED in part** and **DENIED in part** as follows:

1. The United States' request to strike plaintiffs' amended disclosures is **DENIED**.
2. The United States' request to designate a physical medicine and rehabilitation medicine expert is **DENIED**.
3. The motion is **GRANTED** to the extent that Plaintiffs will be precluded from offering Ms. Wainwright's expert testimony at the time of trial that F.N. will need:
    a. Fusion surgery to correct shortened hamstrings;

11

  b. Lifetime summer camps with travel to and from camp;

  c. A new house and lifetime HOA fees to maintain the house; and

  d. Lifetime follow up exoskeleton technology.

4. Wainwright will also be precluded from supporting her testimony at the time of trial with opinions contained in the rebuttal report of Dr. Strobel, the video, and Ms. Krensky's deposition testimony.

5. The plaintiffs will be precluded from calling Mr. Boyer from testifying at trial.

6. The plaintiffs' causation experts will be precluded from relying on Ms. Wainwright's medical records summary in their testimony at trial.

7. The United States shall have until **March 8, 2018** to designate a rebuttal expert to rebut the life care plan prepared by Ms. Wainwright and a rebuttal expert to rebut the amended economic expert disclosure of Mr. Nicolatus.

8. The parties shall immediately meet and confer to schedule the deposition of Ms. Wainwright and the United States' rebuttal life care planner and rebuttal economic expert, if they so choose, no later than **April 5, 2018.**

9. The parties' requests for monetary sanctions are **DENIIED.**

10. Any request for relief not specifically addressed in this order is **DENIED.**

DATED this 7th day of February, 2018.

                   _____
                   PEGGY A. LEEN
                   UNITED STATES MAGISTRATE JUDGE